IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Linda S. Parks,
    Plaintiff,

Kansas Attorney General Derek Schmidt,
    Intervenor,

    vs.                Case No. 12-1140-JTM

Persels & Associates, LLC, et al.
    Defendants.

MEMORANDUM AND ORDER

Even though he was heavily in debt, Levi Kinderknecht wished to avoid bankruptcy. By the internet, he found and contacted a company, CareOne Services, Inc., which promised help. CareOne referred Kinderknecht to defendant Persels and Associates, LLC, a law firm incorporated in Maryland. Kinderknecht and Persels contracted for debt settlement services, some of which were to be provided by a Kansas attorney, Stan Goodwin, working as an independent contractor for Persels. After many months of paying on a debt settlement plan which largely paid the legal fees of Persels and Goodwin, and almost nothing to pay down his debt, one of Kinderknecht's creditors brought suit and he filed for bankruptcy. Trustee Linda S. Parks then brought the present adversarial action against Persels and Goodwin for violation of the Kansas Credit Services Organization Act (KCSOA), K.S.A. 50-1118, the Kansas Consumer Protection Act (KCPA), K.S.A. 50-626, fraudulent transfer, disgorgement of fees, legal malpractice, and breach of fiduciary duty
.

The bankruptcy court granted the defendants' Motion for Summary Judgment as to some of the alleged deceptive practices Parks claimed violated the KCPA. However, the court found that three representations by the defendants, as well as the defendants failure to register under the KCSOA, could constitute deceptive practices under the KCPA. In addition, the court denied defendants' summary judgment as to the remaining claims.

In the wake of *Sterns v. Marshall*, 131 S.Ct. 2594 (2011), the bankruptcy court's opinion was presented to this court as a Report and Recommendation. (Dkt. 2, at 19). As they did before the bankruptcy court, the defendants contend that application of the KCSOA and the KCPA to their provision of legal services violates the separation of powers and is impermissibly vague.

Parks and Kansas Attorney General Derek Schmidt (who has intervened to support the bankruptcy court's statutory and constitutional findings) filed Responses to the defendants' Objections. In the light of the defendants' constitutional challenge to the application of the KCSOA and KCPA, this court certified two questions to the Kansas Supreme Court in a separate proceeding also grounded in the similar activities by debt services agencies.

The supreme court recently answered those questions, *Hays v. Ruther*, __ Kan. __, 313 P.3d 782 (2013). In light of this ruling, the court hereby adopts the Report and Recommendation of the bankruptcy court. The court grants in part and denies in part the defendants' summary judgment motion in the same manner as provided in that court's ruling, and the defendants' Objections are hereby overruled.

The bankruptcy court sets forth the procedural and factual background of the case in careful detail (Dkt. 2, at 5-16). With some exceptions (discussed in the argument portion of their Objections), the defendants do not challenge those findings, which are adopted and incorporated herein. Further, as discussed later, the court finds that the defendants' specific objections to the bankruptcy court's factual findings are without merit, given the standard

for reviewing summary judgment motions.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

3

*Constitutional and Statutory Application*

The supreme court's opinion in *Hays v. Ruther* confirms the bankruptcy court's rejection of the separation of powers argument advanced by the defendants.

> Many of the remedies under the KCPA provide for economic sanctions. In this respect, they are little different from common-law malpractice claims or statutory allocation of attorney fees. Certain sanctions, however, such as restraints on the scope of an attorney's practice, could cross into the area of regulating the practice of law that is reserved for this court.
> When the answer to a certified question depends on factual circumstances, this court will not provide a definite response. *See American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1067, 179 P.3d 1104 (2008). We hold that attorneys are not inherently exempt from the reach of the KCPA by virtue of the doctrine of separation of powers, but certain statutory remedies may be unconstitutional if they encroach on the traditional exclusive powers of the court, especially the powers relating to issuing and regulating the license to practice law.

313 P.3d at 789.

The court finds nothing in the factual circumstances of the case which would indicate that application of the KCPA to Persels and Goodwin would violate any constitutional norm. Here, the defendants object to the bankruptcy court's conclusion by asserting that "the consensus of courts addressing the constitutional issue" supports their position. (Dkt. 4, at 19). In support of this assertion, the defendants attach a footnote with a string citation of fifteen cases from other jurisdictions.[1] But the court finds nothing in that

---

[1] Defendants supply no explanatory or parenthetical information for the citation. A review of the cited cases shows that some state courts indeed have adopted a broad view of their exclusive power to regulate attorney conduct. See *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 220 (Del. 1990) ("In Delaware there is the fundamental constitutional principle that this Court, alone, has sole and exclusive responsibility over all matters affecting governance of the Bar"); *Beyers v. Richmond*, 937 A.2d 1082, 1092 (Pa. 2007) (application of debt collection statute in case of alleged misappropriation of client funds would violate court's exclusive powers); *Jackson v. Adcock*, 2004 WL 1900484, *5 (E.D. La. 2004 (based on *Thibaut v. Smith and Loveless*, 576 So.2d 532, 537 (La.App.1 1990) (state supreme court "has the exclusive and plenary power to define and regulate all facets of the practice of law")); *Cripe v. Leiter*, 184 Ill.2d 185, 703 N.E.2d 100, 105 (1998). At the same time, the court notes that most of the decisions cited by defendants are not directly grounded in constitutional considerations. Rather, these decisions turn on statutory construction, finding explicit or implicit restrictions in the state consumer protection statute. *See Averill v. Cox*, 145 N.H. 329, 761 A.2d 1083 (2000) (exclusion in consumer statute for "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board" deemed to include legal services); *Rousseau v. Eshleman*, 129 N.H.

putative consensus, or in *Hays*, which would support the conclusion that the legislature may not seek to regulate lawyers who are not in fact regulated by the Kansas Supreme Court.

The bankruptcy court rejected Persels' separation of powers argument for two reasons. First, it was not so much that Persels is a law firm, but that it is "[a]n *out-of-state* law firm," one which "has not identified a single Persels attorney that dealt with Kinderknecht and is licensed to practice law in the state of Kansas or admitted to practice before the Kansas courts." (Dkt. 2, at 49) (emphasis added). Second, even if Persels were allowed to premise its exemption claim upon Goodwin (its independent contractor in Kansas), factual issues precluded summary judgment. That is, Goodwin's apparent abandonment of the ordinary requirements of legal representation was so comprehensive that a rational fact finder could conclude that he was not actually engaged in the practice of law at all. The court finds no basis for altering this conclusion.

The bankruptcy court correctly rejected defendants' argument that application of the KCSOA or KCPA imperilled the separation of powers. As the court pointed out, attorneys who are not licensed to practice law in Kansas are not subject to the regulatory

---

564, 519 A.2d 243 (1986) (legal services excluded from statute); *Burke v. Gammarino*, 670 N.E.2d 295, 298 (Ohio 1995) (statute explicitly excluded "transactions between attorneys ... and their clients"); *Reid v. Ayers*, 138 N.C.App. 261, 531 S.E.2d 231 (2000) (statute explicitly "does not include professional services rendered by a member of the learned profession"); *Lyne v. Arthur Anderson & Co.*, 772 F.Supp. 1064, 1068 (N.D. Ill. 1991) (relying on *Frahm v. Urkovcihy*, 113 Ill.Ap.3d 580, 585, 447 N.E.2d 1007 (1983) and concluding that consumer act governing "trade or commerce" was not intended to govern legal services); *Macedo v. Dello Russo*, 178 N.J. 340, 840 A.2d 238 (2004) (drawing inference of legislative acquiescence in prior rulings); *Vort v. Hollander*, 257 N.J. Super. 56, 607 A.2d 1339, 1342 (1992) (noting that state legislature had explicitly added regulation of real estate to the consumer fraud statute, and that "[h]ad the Legislature intended to enter the area of attorney regulation it surely would have stated with specificity that attorneys were covered"). Other decisions acknowledge that state consumer laws may legitimately apply to some aspects of legal practice. *Quinn v. Connelly*, 63 Wash.App. 73, 821 P.2d 1256 (1992) (statue does not apply in cases of professional negligence, but can be applied to claims regarding "the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients"); *Ikuno v. Yip*, 912, F.2d 306 (1990) (same, also applying Washington law).

5

powers of the Kansas Supreme Court. Application of either the KCPA or the KCSOA cannot undermine regulatory authority that does not exist. (*Id.*, at 48-49) (finding additionally that "the structure of the KCSOA actually respects the separation of powers by excluding attorneys "licensed in Kansas and act[ing] within the scope of their practice as an attorney").

The court finds no conflict between the constitutional power of the Kansas courts, on the one hand, and the application of the KCSOA and KCPA under the facts of this case, on the other. The KCPA, which seeks to protect the public, both "is consistent with the Kansas Rules of Professional Conduct," and "harmonizes with the goals of this court when it regulates the practice of law." 313 P.3d at 788. The private cause of action established by the KCPA "supplements the regulatory power of this court." (*Id.*) In light of the constitutional ruling in H*ays*, the court finds no basis for departing from the well-reasoned opinion of the bankruptcy court as to the constitutional application of the KCPA to Persels' conduct.[2]

In addition to the constitutionality of the KCPA, the *Hays* court also addressed the breadth of the attorney exemption to the KCSOA, holding that the Act exempts both an attorney and the attorney's law firm. At the same time, the court stressed that "[w]e are not asked to define a law firm, and we take no position on whether the defendant Consumer Law Associates, LLC, is an exempt law firm under the KCSOA." 313 P.3d at 787.

---

[2] The court also rejects defendants' vagueness argument, which they reassert only in a brief passage in the Objection. (Dkt. 4, at 9). The exemption is explicitly restricted to attorneys "licensed to practice law in this state" and their law firms. The bankruptcy court properly denied this argument, observing that "Persels did not lose the safe-harbor because it was a corporation or a law firm; it lost it because it is *not licensed to practice law* in Kansas," and that "[n]one of Persels' attorneys are licensed to practice law in Kansas." (Dkt. 2, at 50) (emphasis in original). Given the explicit restriction of the KCSOA exemption to attorneys licensed in Kansas, the court finds that an ordinary persons using common sense would be able to understand and comply with the statute.

At the time of the events giving rise to the present action, the KCSOA exempted from its application "[a]ny person licensed to practice law in this state acting within the course and scope of such person's practice as an attorney shall be exempt from the provisions of this act." K.S.A. 50-1116(b). Under K.S.A. 50-1117(f), a person is "any individual, corporation, partnership, association, unincorporated organization or other form of entity, however organized, including a nonprofit entity." *Hays* noted the potential conflict from these two provisions, since "[b]usiness organizations cannot be licensed to practice law." 313 P.3d at 786.

The court reached its conclusion that law firms are eligible for the KCSOA attorney exemption on two grounds. First, it noted the "absurd results" which would arise if law firms were automatically subject to KCSOA liability, since this would mean that the KCSOA exemption would protect lawyers but not their law firms.

> To exempt attorneys from statutory requirements and penalties while subjecting their support staff to such requirements and penalties would at the very least vastly complicate the practice of law and in many instances could render it impractical. Furthermore, attorneys frequently set up their practices as business organizations. Attorneys who elect to form limited liability companies would find themselves in the peculiar situation of being exempt as individuals from the reach of KCSOA but subject to all the requirements of KCSOA in their business organizational capacity.

313 P.3d at 787.

Second, the court found support in recent 2012 amendments to the KCSOA specifically adding law firms to the language of the exemption. See 50-1116(b) (); 50-1117(g).

The court finds that Persels is not eligible for the KCSOA exemption, and that this application of the statute is consistent with *Hays*, the language of the statute, and constitutional concerns. The "peculiar situation" identified in *Hays*, where attorneys "who elect to form limited liability companies" would be "exempt as individuals" but liable "in their business organizational capacity" is not present here.

7

As the bankruptcy court determined, *none* of the attorneys who set up Persels are licensed in Kansas. Accordingly, none of the Persels attorneys is subject to the conflict identified in Hays. Goodwin, of course, was never an owner, member or participant in Persels, and did not belong to the firm in any substantial way. He acted at Persels' direction purely as an independent contractor.

Similarly, the modified version of K.S.A. 50-1116(b) now exempts

> Any individual *licensed to practice law in this state* acting within the course and scope of such individual's practice as an attorney, and such *individual's law firm*, shall be exempt from the provisions of this act.

(Emphasis added). Similarly, K.S.A. 50-1117(f) defines a "law firm" to mean

> a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization.

As the court in *Hays* noted, the amendment to K.S.A. 50-1116(b) applies to an individual attorney who is licensed to practice in Kansas and to "the individual's law firm." But none of the individual attorneys of Persels are licensed to practice law in Kansas. Goodwin, who is licensed in Kansas, is not a lawyer who has any membership interest in Persels as a limited liability corporation.

Thus, while the decision in *Hays* clarifies Kansas law and effectively displaces *Consumer Law Assoc. v. Stork,* 47 Kan.App.2d 208, 276 P.3d 226 (2012), the court notes that the bankruptcy court cited *Stork* but did not rely upon it. Rather, the bankruptcy court found Persels was not entitled to the Kansas exemption because, as it noted in the context of its discussion of the constitutional issues, none of Persels members were licensed to practice in Kansas.

> Persels admits that none of its "staff attorneys" or members is licensed to practice law in Kansas. Nor has Persels identified a Kansas licensed attorney in the Persels firm who represented Kinderknecht and provided legal services to him. Indeed, the fact that Persels has no attorneys licensed in this State is the very reason it needed Goodwin, who is licensed in the state of Kansas, to "represent" the Kansas debtor. . . . But Goodwin's relationship with Persels is that of an independent contractor, not a member of the Persels

8

> law firm acting as an agent of Persels. . . . Holding otherwise would allow Persels to insulate itself from any liability resulting from Goodwin's conduct because he is an independent contractor while availing itself of the KCSOA safe harbor on the strength of Goodwin's Kansas license. Persels can't have it both ways.

(Dkt. 2, at 24).

If anything, the court finds that the problem of the "absurd result" identified in *Hays* would arise only if the court were to adopt Persels' argument relating to the exemption. If the court so held, it would mean that Kansas attorneys and their law firms would be subject to regulation by the Kansas Supreme Court, while non-lawyer credit services organizations were subject to the KCSOA. But out-of-state attorneys, such as Persels, would remain wholly unregulated under Kansas law.

Similarly, the court finds that summary judgment should not be granted as to Goodwin's entitlement to the KCSOA exemption. As the bankruptcy court explained, [Goodwin] had no engagement or fee agreement with Kinderknecht and did not directly charge Kinderknecht fees. Goodwin received fees from Persels, not Kinderknecht. Goodwin gave Kinderknecht no specific legal advice about entering into the debt settlement plan. Kinderknecht had already retained Persels and enrolled in the plan before he was assigned to Goodwin. Goodwin did no negotiating with any creditors. Indeed, he testified that he would not have advised Kinderknecht to proceed with debt settlement with respect to Bank of America or Citi. Only when Kinderknecht was sued did Goodwin confer with him about how to proceed and Goodwin's only contribution then was to "ghost" some pleadings and forward them to Kinderknecht for Kinderknecht to sign. Despite his telling Kinderknecht that he would try to dissuade Citi's counsel from pursuing the action, he never did so.

In objecting to this finding, the defendants argue that these findings, if true, may impeach the quality of Goodwin's representation, but they do not affect the fact of the representation itself. The court disagrees. The facts set forth by the bankruptcy court would

9

support the conclusion that Goodwin is not entitled to the exemption. As noted earlier, the KCSOA exemption applies only to an attorney "acting within the course and scope of such person's practice as an attorney." Here, the Goodwin's departure from the minimal expectations of any attorney is so complete that a rational fact finder could determine that he was not acting as an attorney at all. The bankruptcy court correctly observed, "If this is the extent of what Goodwin does for his 'clients,' whether he is 'practicing law' as that term is commonly understood is questionable." Summary judgment was correctly denied. (Dkt. 2, at 22).

*KCSOA Violations*

Having determined that the bankruptcy court properly rejected the defendants' constitutional arguments and their claim of exemption under the KCSOA, the court turns to the defendants' objections to specific conclusions of law. The bankruptcy court found that the trustee had presented triable claims as to violations of the KCSOA, fraudulent transfer, disgorgement, legal malpractice, breach of fiduciary duty, and violations of the KCPA.

The courts finds no basis for disturbing the Report and Recommendation in its suggested finding that summary judgment should be denied as to the KCSOA claims. As discussed above, the defendants have not shown that they are entitled to exemption from the statute, and it is undisputed that the defendants did not comply with the provisions of the statute. Further, the failure of the defendants to register under the KCSOA is also relevant because such a failure constitutes a deceptive practice under the KCPA.

*Legal Malpractice*

The Objections filed by the defendants do not address either the findings relating to fraudulent transfer or disgorgement of attorney fees. The court adopts the Report and Recommendation on these claims. But the defendants do object to the bankruptcy court's

recommendation that the court deny summary judgment on the trustee's legal malpractice claim. Specifically, they contend that the claim is fatally deficient because the trustee has not offered expert testimony in support of the claim.

The court overrules the objection for three reasons. First, the failure of Goodwin and Persels to perform even rudimentary and minimal services for Kinderknecht, along with (construing the evidence in the light most favorable to the trustee) their active misrepresentation of the services which would actually be provided, means that the case presents an exception to the general rule. While Kansas law generally requires proof of legal malpractice by expert testimony, it also recognizes that

> there is a common knowledge exception to the rule requiring expert testimony in malpractice cases. Expert testimony is not necessary where the breach of duty on the part of the attorney, or his failure to use due care, is so clear or obvious that the trier of fact may find a deviation from the appropriate standard of the legal profession from its common knowledge.

*Bowman v. Doherty*, 235 Kan. 870, 879, 686 P.2d 112 (1984).

Second, although the trustee has not presented expert testimony of legal malpractice, she has identified strong evidence of the standard of care based upon testimony by agents of the defendant. During the testimony of one Persels employee, the examining magistrate observed that it struck him that it would be negligence to fail to mention bankruptcy to some heavily indebted clients. The Persels employee did not disagree, testifying instead that "I think its required that we mention, that we let our clients know all of their options," and that "you want to make sure that they're making an informed decision when they retain our firm." There is also evidence that Persels gives training to its field attorneys on when a client should be advised to take bankruptcy. That is a decision which is made by the client "after consultation with their [Persels field] attorney."

Third, the court notes that the essence of the alleged misconduct falls within the contours of explicit ethical duties of counsel. Under Kansas Rule of Professional Conduct

11

1.4(b), "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." This provision helps define the standard of care, and the court finds in light of all the evidence that Parks' legal malpractice claim need not be dismissed solely because of a lack of expert testimony.

The defendants do dispute some of the factual findings set forth in the Report and Recommendation. (Dkt. 4, at 23-26). Thus, the defendants imply that it was not particularly important to Kinderknecht that Goodwin contact his creditors to try to settle the debts. (Dkt. 4, at 26). In the cited testimony, however, Kinderknecht merely answered "not specifically" when he was asked if he was ever told "Mr. Goodwin himself would pick up the phone and *personally* call the creditors." (Dep. at 104) (emphasis added). He was then asked if it "really matter[ed] whether or not Mr. Goodwin or someone on his behalf contacted creditors?" Rather than indicating it did not matter, Kinderknecht responded, "Just somebody that could get the problem resolved." The clear import of the answer was that Kinderknecht did want some action taken by some person to resolve the problem, whether that person was Goodwin or not. Other evidence before the bankruptcy court supports the inference that Kinderknecht wanted someone to resolve the problem, and that he understood that person would be an attorney. Thus, the material sent to Kinderknecht explained "You will be represented for purposes of negotiation of your debts by a Persels & Associates LLC attorney licensed in your state of residence."[3]

The defendants also dispute the bankruptcy court's conclusion that the defendants failed to call Kinderknecht's creditors, and that, although Goodwin told Kinderknecht he would negotiate on his behalf, he never did so. The objection is without merit.

---

[3] The questions posed to Kinderknecht were not free from ambiguity. He was asked, "So if staff or a non-lawyer, legal assistant were actually to call on behalf of Persels and say, hey, we represent him, are you interested in settling this debt, that's what you wanted to have happen?" To most witnesses, of course, "representation" would imply *legal* representation. Kinderknecht testified, "I wanted a resolution to the ultimate problem – having debt."

Kinderknecht testified that, although he could not remember the details, Goodwin told him that "he [Goodwin} wanted to try to work with" one of Kinderknecht's creditors. Kinderknecht could appropriately infer that this was a representation that Goodwin would negotiate with his creditors. The court overrules the objection.

Defendants dispute the finding that Kinderknecht had only $22.90 available for payment of debts. However, this figure is directly grounded in the "personal financial summary" which identifies that figure as the "net monthly cash flow for unsecured debt payment." Defendants contend that this $22.90 was indeed "the amount of money paid into trust for the first five months, after fees." (Dkt. 4, at 25). But this argument obscures the actual amount of those legal fees. In the first months of the plan, Kinderknecht made monthly payments of $162.90, Persels' fees for its legal services dwarfing the amount Kinderknecht was actually contributing to the debt settlement.

Finally, the defendants challenge the bankruptcy court's findings that Goodwin failed to inform Kinderknecht of the potential merits of filing for bankruptcy. Specifically, the defendants argue that bankruptcy court erred in finding that Goodwin essentially admitted that persons with large credit card debts, such as Kinderknecht, are likely to be sued even if they start a debt settlement plan. The defendants stress that Goodwin never specifically mentioned Citi, the credit card company who actually filed suit against Kinderknecht, as one of the creditors prone to litigation. Instead, Goodwin only referenced Bank of America and Capital One as examples of "credit card companies [which] file a fair number of lawsuits against our clients."

While the defendants stress that Kinderknecht had no Capital One account, they fail to acknowledge that Kinderknecht had nearly $5000 in unsecured debt to Bank of America. Goodwin specifically testified that, depending upon their individual circumstances, it may be better for clients to immediately declare bankruptcy rather than pursue debt settlement. He has, in fact, "absolutely" done this on some occasions. For, example, this approach

should be followed if a client has "a large percentage of their total debt" with one of those creditors who is "historically litigation happy." Goodwin's example of Bank of America as one of the credit card companies which "file a fair number of lawsuits," is given in the context of this discussion. (Dep. at 31-33).

Further, Goodwin acknowledged that the chances for a successful debt settlement are reduced if the largest debt is greater than $1200 to $1800. Here, Kinderknecht owed some $5000 to Bank of America, and $3000 to Citibank. Kinderknecht has testified that he was not advised about bankruptcy as an alternative. He testified that he believed lawyers would be handling the debt settlement negotiations. Kinderknecht assumed that, by paying "legal fees," he was hiring a lawyer to perform negotiations with creditors. He did not understand that lawsuits were possible during the settlement negotiations period.

The court denies the objection, finding that the trustee has presented evidence sufficient to warrant trial on the issue of legal malpractice.

*Fiduciary duty*

The defendants present two arguments in support of the objection regarding the breach of fiduciary duty claim. First, they argue that the bankruptcy court erred in its factual findings. (Dkt. 4, at 29-30). Second, they argue that the fiduciary duty claim should be dismissed as duplicative to the legal malpractice claims.

The court denies these objections. They largely repeat their earlier arguments relating to the testimony of Goodwin and Kinderknecht. As the court previously indicated, a full review of the evidence supports the bankruptcy court's recommending factual findings.

The defendants do present one new factual argument. Specifically, they object to one element of bankruptcy court's decision. As to the breach of fiduciary claim, the bankruptcy court found:

14

Reasonable minds could differ whether defendants acted in Kinderknecht's interests in placing him in debt settlement when his monthly budget showed he had a meager $23 of disposable income to pay on his unsecured debts, he had certain creditors and debt amounts that defendants knew from experience were likely to sue him to collect, he was not protected from suit by creditors, he feared getting sued and having to go to court, and he was not advised that most people enrolling in debt settlement never complete the plan.

The defendants contend that the final point here — that Persels rarely succeeded with its settlement programs was a relevant consideration— is contradicted by the court's later findings with respect to some of the alleged KCPA violations. In rejecting most of the alleged deceptive acts under the KCPA, as identified by the trustee, the bankruptcy court concluded that for purposes of that statute

> I conclude that the experience of other debt settlement clients (i.e. completion and termination rates) is not a material fact required to be disclosed in the absence of any evidence that other clients' financial situation and debts were similar to Kinderknecht's. Simply put, the experience of others is not predictive of whether Kinderknecht could and would perform his debt settlement plan. Failing to tell Kinderknecht that the benefits of debt settlement to consumers similarly situated are unsubstantiated is not, in and of itself, deceptive for the same reasons.

(Dkt. 2, at 38).

The court finds the factual objection fails. To the extent there is a conflict between the breach of fiduciary duty and the KCPA findings as to the probative value of the failure rate, this court finds that the error occurred in the latter, rather than the former.[4] That is, given the extremely high dropout rate of Persels clients, this information would certainly be information that an ordinary customer would wish to know. Evidence about the experience of other debtors may not be "predictive" of Kinderknecht's actual, ultimate experience, but this is not dispositive of the fiduciary duty claim. A fiduciary owes the highest duty of ** honesty. The standard is not clairvoyance but simple honesty. A rational

---

[4] The trustee filed no objections to the Report and Recommendation. Accordingly, the court is not called on to decide whether the Report erred in recommending awarding summary judgment on the most of the KCPA omission claims.

15

fact finder could conclude that the failure to mention the Persels' dismal success rate did not meet this standard.

The defendants' argument that the breach of fiduciary claim is duplicative of the legal malpractice claim is potentially substantial. *See, e.g., Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 2014 WL 278399, *2 (2d Cir. 2014).

However, the defendants did not present this argument to the bankruptcy court. "Generally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." Grant v. Brandt, 2012 WL 3764548, at *4 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Greathouse v. JHS Sec. Inc.*, 11 Civ. 7845(PAE), 2012 WL 5185591, at *6 (S.D.N.Y. Oct. 19, 2012) (same). Although presented here as a Report and Recommendation by the bankruptcy court, this court finds no reason to alter this rule, which rests on important principles of fairness and the conservation of resources. "Failure to raise arguments will often mean that facts relevant to their resolution will not have been developed; one of the parties may be prejudiced by the untimely introduction of an argument.... Additionally, a willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000).

*KCPA claims*

The bankruptcy court granted summary judgment as to most of the alleged deceptive practices identified by the trustee. However, in addition to the failure to register under the KCSOA, which is treated as a deceptive practice under the statute, the court identified three acts which, if proven at trial, could constitute deceptive practices under the KCPA: (1) the use of a nonrefundable retainer by Persels, (2) the suggestion to

Kinderknecht that he would receive Kansas legal representation, and (3) the failure to disclose to Kinderknecht that his debts were too high for a likely successful settlement. The defendants challenge each of these conclusions on various grounds.

With respect to the first, the defendants argue that the record fails to reflect that Kinderknecht was actually charged a nonrefundable retainer. The defendants argue that this conclusion is error because "[u]nlike other [related] cases being litigated by plaintiff, this case does not even involve a nonrefundable retainer as part of the fee agreement." (Dkt. 4, at 33).

The court denies the objection. The bankruptcy court did not determine that Persels acted deceptively by employing an explicit provision providing that its retainer was not refundable. Rather, it ruled that under the circumstances of the case, the defendants achieved this result indirectly:

> Persels did represent that Kinderknecht would pay a flat fee of $2,000 over the first 18 months of the representation with $100 paid upon Persels' receipt of the signed retainer agreement. It implicitly represented that the fees portion of the total monthly payment were nonrefundable because upon early termination of the agreement, only those funds held in escrow for payment of debts would be returned to Kinderknecht; the attorney fees would be taken out of the account by Persels. Nowhere in the retainer agreement does it provide for return of the paid attorney fees upon early termination of the agreement. This precludes summary judgment on this alleged deceptive act.

(Dkt. 2, at 36). The court finds no error in this conclusion.

The defendants argue that the bankruptcy court erred when it found that they led Kinderknecht to believe his case would be handled by a Kansas lawyer. Goodman may not have personally contacted Kinderknecht's creditors, they argue, but Persels staff did so. In support of their argument, they cite a single case from Georgia, *Doyle v. Frederick J. Hanna & Assoc.*, 287 Ga. 289, 292, 695 S.E.2d 612, 615 (2010), for the proposition that "[t]he heavy use of staff in contacting creditors does not undercut [the] conclusion that Kinderknecht received "legal services from a licensed Kansas attorney." (Dkt. 4, at 34). The defendants otherwise rest their argument on the factual contentions they made in the context of the

trustee's other claims. The court addressed those contentions previously, finding that material issues of fact existed with respect to the representations made to Kinderknecht, the extent of his reasonable expectations, and the level of services actually provided to him.

*Doyle* does not compel a different result for the KCPA claim. In that case the court merely held that "[t]he nature of such representation of clients in a legal capacity is not destroyed by the utilization of '"staffing, training, equipment or support personnel."'" 287 Ga. at 292 (quoting *Henderson v. Gandy*, 280 Ga. 95, 98, 623 S.E.2d 465 (2005) (quoting *Haynes v. Yale-New Have Hosp.*, 243 Conn. 17, 35, 699 A.2d 964 (1997))). None of the cases in this line of authority address the "heavy" use of support staff, and certainly none suggest that such staff may be employed even when a client has been told that a particular action will be handled by a lawyer. The essence of the trustee's claim under the KCPA is that Kinderknecht was led to believe a Kansas lawyer would handle the settlement negotiations, and the court agrees with the recommendation that, if proven, this would constitute a deceptive act under the KCPA.

Finally, the defendants argue that the bankruptcy court erred in deciding that summary judgment should be denied as to the alleged willful failure to explain to Kinderknecht that debt settlement held a small or even remote chance of success. The defendants support his argument, however, only by referencing their arguments as to the legal malpractice claim. Accordingly, they argue, the two claims must stand or fall together. (Dkt. 4, at 34).

Of course, since the court has already determined that the Report and Recommendation correctly denied summary judgment as the legal malpractice claim, it follows that the KCPA claim predicated on this omission would stand as well. But even if it did not, it is not clear that summary judgment on the KCPA claim would be appropriate. As noted earlier, the centerpiece of the defendants' legal malpractice argument is that expert testimony is necessary to establish that claim. But the defendants present no

grounds for believing that such testimony is always required to show a violation of consumer protection statutes.[5]

Finally, with respect to the bankruptcy court's decision to deny summary judgment on the trustee's claims of unconscionable conduct, the defendants simply reassert their belief that summary judgment should have been granted. "That being said, the ultimate decision is before the court, not a jury." (Dkt. 4, at 34-35).

The defendants are correct that unconscionability is resolved by a trial to the court. However, the defendants fail to otherwise show how the bankruptcy court's careful exploration of the issue (Dkt. 2, at 42-46) is otherwise erroneous.

IT IS ACCORDINGLY ORDERED this 18th day of March, 2014, that the defendant's Objections (Dkt. 4) are overruled, and the Report and Recommendation of the bankruptcy court (Dkt. 2) is hereby adopted.

     s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

[5] See *Castillo v. Latham*, 973 S.W.2d 312, 318 (Tex.App. 1996) (consumers could support their claim of misrepresentation-based misconduct as unconscionable acts under Texas consumer protection statute based on their own testimony, and "did not need expert testimony"), *aff'd in part, rev'd in part on other gds.*, 972 S.W.d 66 (Tex. 1998).